UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

RAYMOND ("RAY") ROE and
ADECCO USA, INC.,

                    MEMORANDUM AND ORDER

                    Plaintiff,

          --against--                    CV-06-5616
                                         (Wexler, J.)

STEPHEN J. ARNOLD,

                    Defendants.
------------------------------------------------------------X

          BINGHAM McCUTCHEN LLP
          BY: DAVID J. BUTLER, ESQ.
          2020 K Street, NW
          Washington, DC 20006
          Attorneys for Plaintiffs

          QUIRK AND BAKALOR, P.C.
          BY: DONNA H. BAKALOR, ESQ.
          845 Third Avenue, 15th Floor
          New York, NY 10022
          Attorneys for Defendant

WEXLER, District Judge:

This is an action commenced by Plaintiffs Raymond Roe ("Roe") and Adecco, Inc. ("Adecco")

(collectively "Plaintiffs') against Defendant Stephen J. Arnold ("Defendant" or "Arnold") alleging

violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030, as well as defamation, common law

fraud and tortious interference with contractual relations under New York State law. Presently before

the court is Defendants' motions to dismiss for lack of personal jurisdiction. For the reasons set forth

below, the motion is denied.

BACKGROUND

I.      Plaintiffs

The following facts are drawn from Plaintiff's complaint and assumed, for the purpose of this motion, to be true. The court also details facts set forth in Defendant's affidavit.

Plaintiff Adecco, a Delaware corporation with its principle place of business in this district, is one of a group of affiliated corporations organized under a common parent corporation known as the Adecco Group. Adecco and other companies within the group are in the business of operating and licensing others to operate temporary help businesses. These companies do business as franchisees throughout the United States under the Adecco name and other names, including "Olsten Staffing Services." Plaintiff Roe is the president of Adecco. Shares of the Adecco Group are publicly traded on the New York Stock Exchange. Annual sales for Adecco and its affiliated companies total approximately $22 billion.

II.     Defendant and the Operation of His Franchise

Defendant Arnold is a resident of the State of North Carolina who operates an Adecco franchise in that state under the corporate name SASA, Inc ("SASA"). Arnold and his wife are the sole shareholders in SASA. As a franchisee, Arnold has access to Adecco's proprietary computer systems known as the "CM System" and "AdeccoNet." These systems are housed on computer servers located at Adecco's New York offices. The franchisees' access to these systems allow their use in the same way as they are used by those located in the Adecco New York office. Franchisee e-mail accounts are sponsored and maintained by Adecco on the domain 'Adeccona.com."

Adecco franchises do not function independently of Adecco's New York office. Instead, the New York main office supports several essential operations without which the franchisee business could not be conducted. Among those operations supported by the Adecco New York office are accounting, tax, insurance, human resources, benefits and payroll matters. Franchisee customers are

2

acknowledged to be clients of Adecco and, wherever located, are invoiced out of Adecco's New York office. Additionally, all Adecco employees are paid from New York. Plaintiffs describe Defendant's franchise as "a front office that operates symbiotically with Adecco's headquarters in New York." Because of the Adecco business model described above, franchisees like Arnold regularly interact with the Adecco New York office via e-mail, facsimile transmittals and telephone calls. Additionally, Plaintiffs allege that Arnold has traveled to the Adecco New York office to participate in franchisee meetings.

Plaintiffs state that Adecco's New York office has paid Arnold in excess of $4 million annually. Approximately one third of that revenue is alleged to arise from "national accounts." These accounts are generated by Adecco's main New York office and operate throughout the country. National accounts are serviced in the various states by Adecco franchisees. Arnold is alleged to have earned approximately $1.4 million in annual revenue from national accounts generated by the New York office and serviced by his franchise.

III.    The Franchisee Arbitration

Adecco is currently engaged in an arbitration with a class of approximately two dozen of its franchisees that operate temporary help businesses under the Adecco name (the "Franchisee Arbitration"). Arnold is a franchisee involved in the Franchisee Arbitration. The Franchisee Arbitration is based in San Francisco and takes issue with Adecco's operation of temporary staffing businesses under the Olsten name. The arbitration is being conducted by the American Arbitration Association ("AAA"), which entity makes certain information regarding arbitrations publicly available on the internet. The only pleading posted on AAA website regarding the Franchisee Arbitration is a

3

copy of the claimants' statement of claim. Certain confidential information regarding the Franchisee Arbitration is protected from disclosure by a protective order.

## IV.   The Allegations of the Complaint

On October 13, 2006, Adecco received an e-mail from one of its stock analysts referring to the receipt of an unsolicited e-mail referring to Adecco. The unsolicited e-mail originated from a Yahoo account assigned to the screen name "Ray Roe" (the "Roe e-mail"). Defendant is alleged to have sent the Roe e-mail and to have to have created a fictitious screen name identity so as to make it appear that the author of the Roe e-mail was, in fact, the President of Adecco, Raymond Roe. Plaintiffs allege that the information provided to Yahoo when creating the e-mail account from which the Roe e-mail originated was false and created using an internet proxy service, intended to disguise the sender's true identity.

The Roe e-mail is alleged to have contained confidential information about Adecco and the Franchisee Arbitration that could be known only by parties to the arbitration. Included in the Roe e-mail was an unfavorable projection as to the outcome of the arbitration and the significant financial, strategic and operational losses that Adecco would suffer as a result of that outcome.

As noted, Plaintiffs became aware of the Roe e-mail upon being advised of its existence by a stock analyst. Plaintiffs allege that in addition to industry analysts, the Roe e-mail was sent by Defendant to investment banks and to two of Adecco's largest competitors in the temporary staffing industry – Kelly Services and Manpower. It is further alleged that Arnold sent a series of e-mails, similar to the Roe e-mail, pursuant to a "campaign of deceptive, defamatory, and misleading electronic communications over a period of weeks, all delivered to New York." Plaintiffs allege that in sending the Roe e-mail and subsequent e-mails, Defendant intended to impersonate Plaintiff Roe and that the Roe e-mail was false, misleading and designed to cause injury to Adecco. As to damages, Plaintiffs

4

state that if the Roe e-mail resulted in a loss as small as one-tenth of one percent of Adecco's business, that loss would cost Adecco more that $20 million.

## V.     Alleged Violations of Law

Defendant is alleged to have violated the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) ("Section 1030"). Section 1030 provides for a civil private right of action against a defendant who "knowingly and with intent to defraud" accesses a "protected computer" without authorization, and by means of such access, furthers the fraud and obtains anything of value amounting to more than $5,000 in any one year period. The term "protected computer" is broadly defined to include any computer used in interstate or foreign commerce. In addition to violating Section 1030, Plaintiffs allege state law counts in defamation, common law fraud and tortious interference with business relations.

## VI.     Defendant's Motion

Defendant moves to dismiss on the ground that this court lacks personal jurisdiction. Arnold states that he has been a resident of North Carolina for fifteen years. While he concedes that he is an Adecco franchisee, Arnold alleges that he has never resided in or conducted business in New York. In opposition to the motion, Plaintiffs allege that jurisdiction exists under the New York Long Arm statute. After outlining relevant legal principles the court will turn to the merits of the motion.

## DISCUSSION

## I.     Personal Jurisdiction

A district court may exercise jurisdiction over a defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located. Fed. R. Civ. P. 4(k)(1)(A). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 241 (2d Cir. 2007), quoting, Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 20006) . Plaintiff

5

need only make "'legally sufficient allegations of jurisdiction' through its pleadings and affidavits in order to survive a motion to dismiss." Treeline Investment Partners, LP v. Koren, 2007 WL 1933860 *2 (S.D.N.Y. July 3, 2007), quoting, In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). All factual matters are to be resolved in the light most favorable to plaintiff. E.g., Jazini v. Nissan Motor Co., Ltd., 148 F.3d 184, 191 (2d Cir. 1998). If jurisdiction is found to exist under state law the court then turns to address whether the exercise of jurisdiction comports with constitutional standards of due process under the Fourteenth Amendment. Best Van Lines, 490 F.3d at 242

## II.    Personal Jurisdiction Under New York Law

Plaintiff alleges personal jurisdiction over Defendant pursuant to sections 301 and 302 of the New York Civil Practice Law and Rules ("CPLR"). Section 301 of the CPLR provides for general jurisdiction over any of a defendant's activities, while Section 302 provides for the exercise of specific jurisdiction arising out of particular acts. The court discusses first the latter, and narrower, of the provisions, i.e., whether there is a sufficient allegation of specific jurisdiction under Section 302.

### A.    Section 302(a)(1)

#### 1.    Legal Principles

CPLR Section 302(a)(1) provides for jurisdiction over a nondomicilliary defendant who transacts any business within the state so long as the cause of action arises out of the defendant's New York transaction. PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997). A finding of jurisdiction under Section 302(a)(1) requires a showing that defendant: (1) "transacts any business" in New York and, (2) that the cause of action "arises from" such transaction. Best Van Lines, 490 F.3d at 246.

When considering whether a defendant "transacted business," New York courts look to the totality of the defendant's contacts with New York and, similar to the Constitutional inquiry, ask whether those contacts amount to the "purposeful" availment "of the privilege of conducting activities"

6

in New York, "thus invoking the benefits and protections of its laws." Best Van Lines, 490 F.3d at 246, quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958). Proof of one transaction, though the defendant never entered New York, may be sufficient to confer jurisdiction "so long as the defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted." PDK Labs, Inc. v. Friedlander, 103 F.3d 1103, 1109 (2d Cir. 1997), quoting Kreutter v. McFadden Oil Corp., 527 N.YS.2d 195, 198-99 (1988).

A determination that a cause of action "arises" out of a New York transaction requires a finding of an "'articulable nexus between the transaction and the cause of action. . .' or [a] . . . 'substantial relationship between the transaction and the claim asserted.'" Best Van Lines, 490 F.3d at 249, quoting Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006).

2.    Jurisdiction is Properly Alleged Pursuant to Section 302(a)(1)

Application of the foregoing principles leads the court to conclude that Plaintiffs have sufficiently alleged personal jurisdiction pursuant to Section 302(a)(1). The factual recitation above reveals that Defendant has operated an Adecco franchise for the past several years. That business could not operate in the absence of daily interaction with the Adecco New York office. The New York base of operations provides daily support of, inter alia, accounting and human resources functions of Adecco franchises. The clients are Adecco's and all payments originate from the New York office. Importantly, approximately one third of the franchisee income is generated from national accounts, having their origin in New York. These substantial contacts leave the court with little difficulty concluding that Defendant has transacted business in New York. It is similarly clear that the causes of action set forth in Plaintiffs' complaint bear the required "substantial relationship" to the transaction of New York business to satisfy the Long Arm statute.

In light of the court's holding that personal jurisdiction has been properly alleged pursuant to Section 302(a)(1), the court need not consider whether the other provisions of the New York Long Arm

7

statute are satisfied. The court must, however, consider whether the exercise of jurisdiction runs afoul of the United States Constitution.

III.    Due Process

The Due Process Clause of the Fourteenth Amendment to the United States Constitution allows for the exercise of personal jurisdiction over a defendant who has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Milliken v. Meyer, 311 U.S. 457, 463(1940); International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). When judging minimum contacts, the court must focus on "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). The Constitutional inquiry asks whether the defendant has "purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that the defendant should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471 (1985). When deciding this question the court considers the "quality and nature" of defendant's contact with a forum state. Best Van Lines, 490 F.3d at 242-43, quoting, Burger King, 471 U.S. at 462. The Supreme Court has noted the importance of considering the effect of a defendant's intentional conduct aimed at the forum state. Where intentional tortious acts are expressly aimed at a particular state, a defendant should reasonably expect to be called into court there, to answer for his conduct. Calder v. Jones, 465 U.S. 783, 789-90 (1984); see Best Van Lines, 490 F.3d at 243.

Applying these principles to the facts alleged, the court holds that the requirements of the Constitution are satisfied by the exercise of personal jurisdiction over Defendant Arnold. As noted above, Arnold transacted business in the State of New York. Additionally, his intentional conduct was clearly aimed at having an effect on Adecco in New York. Accordingly, in addition to finding an

adequate allegation of personal jurisdiction under New York law, the court holds that Constitutional Due Process is satisfied as well.

## CONCLUSION

For the foregoing reasons, the court denies Defendants' motion to dismiss for lack of jurisdiction. The Clerk of the Court is directed to terminate the motion to dismiss.

SO ORDERED

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
     August 16, 2007

9